IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALI-HAIDER KHAN | CRIMINAL ACTION  NO.<br><br>1:17-CR-40-SCJ-CMS |

## **NON-FINAL REPORT AND RECOMMENDATION**

This case is before the Court on the Motion to Dismiss the Indictment With Prejudice for Selective Prosecution [Doc. 22], the Motion to Compel Selective Prosecution Discovery [Doc. 30], and the Motion to Quash Count One as Fatally Duplicitous or to Require Forced Election [Doc. 17] filed by Defendant Ali-Haider Khan ("Defendant").  For the reasons stated below, I recommend that these motions be DENIED.[1]

---

[1] In this district, discovery motions typically are resolved by the magistrate judge through an order, whereas dispositive motions, such as motions to dismiss, are resolved by the district judge with the benefit of a report and recommendation from the magistrate judge.  In this instance, I have elected to make a recommendation regarding the selective prosecution discovery motion [Doc. 30], rather than issue an order.  Defendant's discovery motion is inextricably intertwined with his motion to dismiss; the denial of his discovery motion necessarily requires the denial of the motion to dismiss.  Accordingly, I am making a recommendation on the discovery motion in this report and recommendation to

## I.   BACKGROUND

On February 8, 2017, a grand jury in the Northern District of Georgia returned a one-count indictment against Defendant for violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) by possessing with the intent to distribute synthetic cannabinoids.[2] [Doc. 1 at 1-2]. Specifically, the indictment alleges:

> On or about November 9, 2015, in the Northern District of Georgia, the defendant, ALI-HAIDER KHAN, did knowingly and intentionally possess with intent to distribute a controlled substance, said act involving a mixture and substance containing:
>
> (1)   a detectable amount of "**AB-FUBINACA**," N-(l-amino-3-methyl-1-oxobutan-2-yl)-1-(4-fluorobenzyl)-lH-indazole-3-carboxamide, a Schedule I controlled substance;
>
> (2)   a mixture and substance containing a detectable amount of "**XLRll**," [1-(5-fluoro-pentyl)-1H-indol-3-yl] (2,2,3,3-tetramethylcyclopropyl) methanone, a Schedule I controlled substance; and
>
> (3)   a mixture and substance containing a detectable amount of "**AB-CHMINACA**," N-(1-amino-3-methyl-1-oxobutan-2-yl)-1-(cyclohexylmethyl)-lH-indazole-3-carboxamide, a Schedule I controlled substance;

---

allow the district judge the opportunity to consider it at the same time as the motion to dismiss.

[2] According to Government, synthetic cannabinoids are typically made by spraying manufactured chemicals such as the three chemicals alleged here—XLR11, AB-FUBINACA, and AB-CHMINACA—on a leafy carrier medium. Users typically smoke the chemically treated herbs in an attempt to get high. [Doc. 37 at 1].

in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

[Doc. 1 at 1-2].

On April 7, 2017, Defendant moved to dismiss the indictment with prejudice for selective prosecution based on race and national origin. [Doc. 22]. Defendant attached to his motion three indictments of three other individuals who were indicted on the same day that he was indicted and who are charged with synthetic cannabinoid offenses. [Doc. 22 at 14-16 (indictment of Shyam Agarwal, 1:17-cr-43); Doc. 22 at 18-22 (indictment of Firoz Lilani, 1:17-cr-41); Doc. 22 at 24-26 (indictment of Imran Makani, 1:17-cr-42)]. Defendant also attached briefs from two of these cases showing that those individuals appear to have been part of an investigation similar to his. [Doc. 22 at 27-44]. According to Defendant's brief, he believes that the three individuals charged in these indictments are "of Indian or Pakistani origin" and were investigated by the same Hindi-speaking DEA agent who used the same "ruse" to ensnare them in criminal activity. [Doc. 22 at 2-3]. In support of his motion to dismiss, Defendant filed a motion for discovery [Doc. 30], asking the Court to compel the following:

> (A) A list of all cases from April 1, 2015 until February 8, 2017 in which the Government charged [offenses involving the synthetic cannabinoids alleged in this case] either collectively or individually, that identifies the race and national origin of the defendants in those cases;

(B) A list identifying what levels of law enforcement were involved in the investigations of those cases;

(C) Any reports or documents prepared in conjunction with the listed cases that explain the government's criteria for deciding to prosecute those defendants for federal synthetic cannabinoid offenses.

(D) Any correspondence between representatives, employees, or agents of the United States Attorney's Office for the Northern District of Georgia referring to the possible prosecution of any non-Indian or non-Pakistanis for possessing with intent to distribute, or conspiring to distribute, synthetic cannabinoids.

(E) Any correspondence between representatives, employees, or agents of the United States Attorney's Office for the Northern District of Georgia and any other person discussing or referring to in any way the race, ethnicity, or nationality of any person or entity in connection with the decision not to prosecute non-Indian or Pakistani possessors or distributors of synthetic cannabinoids between April 1, 2015, and the date of the Indictment, February 8, 2017.

[Doc. 30 at 3-4]. Defendant argues that he is entitled to this discovery because he has shown that "all four defendants charged on the same day with possessing the same controlled substances are of the same race and/or national origin (India or Pakistan)… [and the] conspicuous absence of any other national origin indictments for the same conduct." [Doc. 30 at 3; Doc. 22 at 5].

Defendant has also moved to quash the sole count in the indictment as duplicitous, arguing that although the count appears to allege a single violation of

21 U.S.C. § 841(a)(1), it actually requires proof of three dissimilar unlawful acts that, if proven, implicate different penalties. [Doc. 17 at 4].

## II. ANALYSIS

### A. Selective Prosecution Motions

In United States v. Armstrong, the United States Supreme Court discussed selective prosecution claims as follows:

> A selective-prosecution claim asks a court to exercise judicial power over a special province of the Executive. The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to take Care that the Laws be faithfully executed. As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

> Of course, a prosecutor's discretion is subject to constitutional constraints. One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification. A defendant may demonstrate that the administration of a criminal law is directed so exclusively against a particular class of persons with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law.

United States v. Armstrong, 517 U.S. 456, 464-65 (1996) (internal citations and quotations omitted). The Supreme Court made clear that to obtain discovery on a selective-prosecution claim, a defendant must satisfy a "rigorous standard":

> [W]e turn to the showing necessary to obtain discovery in support of [a selective-prosecution] claim. If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim. . . .

Id. at 468 (internal citations and quotations omitted). The Supreme Court went on to explain that this "rigorous standard" requires a threshold showing of evidence of both (1) a discriminatory effect and (2) a discriminatory intent. Id. (noting that courts require "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent."). The

Supreme Court held that with respect to the first prong—discriminatory effect—the defendant must have *some evidence* that persons outside of the defendant's race or protected class have been treated differently in order to be entitled to discovery on a selective-prosecution claim:

> In this case we consider what evidence constitutes some evidence tending to show the existence of the discriminatory effect element. The Court of Appeals held that a defendant may establish a colorable basis for discriminatory effect without evidence that the Government has failed to prosecute others who are similarly situated to the defendant. We think it was mistaken in this view.

Id. at 468-69 (internal citations and quotations omitted). Thus, to obtain discovery in the aid of a selective-prosecution claim, a defendant must come forward with, among other things, "some evidence of differential treatment of similarly situated members of other races or protected classes." Id. at 470.

It is evident that Defendant has failed to meet this rigorous standard. The only evidence presented in support of Defendant's motion to dismiss is that four people of Indian or Pakistani origin were indicted on the same day for similar charges based on investigations by the same Hindi-speaking DEA agent. Defendant has not presented any evidence that a similarly situated person of another race was treated differently. Under these circumstances, the motion for discovery must be denied. See United States v. Jordan, 635 F.3d 1181, 1188-89 (11th Cir. 2011) ("[T]o establish discriminatory effect, [defendant] would have to

present clear evidence that a similarly situated defendant of another race was treated differently than he.").

Defendant relies upon United States v. Gordon, in which the Eleventh Circuit held that the district court erred in denying an evidentiary hearing on the defendant's selective-prosecution claim. United States v. Gordon, 817 F.2d 1538, 1540 (11th Cir. 1987), vacated in part on reh'g, 836 F.2d 1312 (11th Cir. 1988). Gordon is different from the instant case, however, because the defendant in Gordon had presented the court with some evidence that persons of a different race had committed similar violations and not been prosecuted (which satisfied the discriminatory effect prong) as well as some evidence that established a colorable basis of invidiousness (which satisfied the intent prong). Id. at 1540-41. Unlike the defendant in Gordon, Defendant Khan has not presented any evidence or examples of differential treatment; he has simply pointed to three other indicted defendants who he believes to be of Indian or Pakistani origin who were indicted on the same day under similar circumstances. This does not rise to the threshold showing that Armstrong requires in order to compel the requested discovery from the Government.

### B.     Motion to Quash Count One as Duplicitous

As noted above, Defendant argues that the single count in the indictment is duplicitous because it alleges that he possessed a "mixture and substance" containing a detectable amount of three separate synthetic cannabinoids. [Doc. 17 at 1-2]. In response, the Government argues that the indictment alleges a single offense. [Doc. 37 at 4]. According to the Government, it specified the three different substances in Count One in order to put Defendant on notice of the crime with which he is charged. [Id. at 4, 5]. The Government also argues that there are only three elements of the crime of possession with intent to distribute a controlled substance: (1) knowing (2) possession of a controlled substance (3) with intent to distribute it. [Id. at 4, citing United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983)]. The Government argues that a violation of §841(a) is complete once the person commits the proscribed act and knows that the substance is a controlled substance. [Id., citing United States v. Sanders, 668 F.3d 1298, 1309 (11th Cir. 2012) (other citations omitted)]. The Government contends that the specific type of illegal drug and the specific amount of the illegal drug are not elements of the offense. Defendant filed a reply, relying on McFadden v. United States, 135 S. Ct. 2298 (2015) and United States v. Louis, 861 F.3d 1330, 1335 (11th Cir. 2017). Defendant argues that based on these cases, the Government must prove that

Defendant knew that he possessed the particular chemical alleged <u>and</u> that he knew that it was a controlled substance. Defendant argues that different proof is required to make this showing when three different drugs that are listed in the indictment. [Doc. 42 at 2].

I note first that <u>McFadden</u> and <u>Louis</u> do not address the issue of duplicity in indictments, but rather address the knowledge requirement for drug offenses. Those cases hold that to obtain a conviction under § 841, the Government must prove that the defendant knew he was dealing with a "controlled substance," as opposed to simply contraband made illegal under some law. See <u>McFadden</u>, 135 S. Ct. at 2302 (holding that a jury instruction was inaccurate where it failed to properly convey the knowledge requirement of the Controlled Substances Act); <u>Louis</u>, 861 F.3d at 1335 (reversing a conviction where the Government failed to prove that the defendant knew that he possessed a "controlled substance," and noting that proof that a defendant knew he possessed contraband "illegal under some law" was not sufficient to prove that the defendant knew that he possessed a "controlled substance"). These cases do not create a new pleading standard for criminal indictments.

I agree with the Government that by including the three different substances in the indictment, the Government is merely specifying how the violation of law is

alleged to have been committed; it does not provide alternative legal theories or additional offenses. Count One alleges a single incident of possession (with intent to distribute) a controlled substance on a single, specified date. The Government has latitude to include relevant and material factual allegations in a charge, even where those allegations go beyond what the Government must prove, so long as the alleged facts are not inflammatory or prejudicial. See United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (stating that a court should not strike surplusage in an indictment unless the allegedly surplus language is both irrelevant to the charge and also inflammatory and prejudicial).

Moreover, the dangers posed by duplicitous counts are not present here. The Eleventh Circuit has identified three such dangers: (1) that a defendant may be prejudiced in a subsequent double jeopardy defense; (2) that a court may have difficulty determining the admissibility of evidence; and (3) that a jury may convict a defendant without unanimously agreeing on the same offense. See United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997). Defendant has not attempted to show how any subsequent double jeopardy defense might be prejudiced, nor has he identified any evidentiary rulings that might be impacted by the manner in which the Indictment was pled. With respect to the third danger—the risk that a jury might convict Defendant without unanimously agreeing on the

same offense—any potential issue can be cured (to the extent it exists) either by giving a unanimity jury instruction or by requiring the Government to elect the basis upon which it will continue the prosecution. See, e.g., United States v. Pansier, 576 F.3d 726, 734-35 (7th Cir. 2009) (holding that a potentially duplicitous indictment was not prejudicial because the risk of a non-unanimous verdict was cured by a revised indictment and jury instruction); United States v. Miller, 520 F.3d 504, 513 (5th Cir. 2008) (holding that even if the charge was duplicitous, there was no risk of a non-unanimous verdict because the court gave an appropriate offense-specific instruction and a general unanimity instruction); United States v. Starks, 472 F.3d 466, 471 (7th Cir. 2006) (holding that a special verdict form combined with instructions alleviated any concern regarding duplicity); United States v. Shumpert Hood, 210 F.3d 660, 663 (6th Cir. 2000) (noting that a defendant may move at trial to require the government to elect either the count or the charge within the count upon which it will rely); United States v. Hicks, 529 F.2d 841, 843 (5th Cir. 1976) (finding that any issue regarding duplicity was resolved before submission to the jury where the government moved to elect one charge in duplicitous count).

      Defendant has failed to demonstrate that the indictment should be quashed or that the Government should be required at this stage of the proceedings to

narrow the indictment. Accordingly, I recommend that Defendant's motion to quash [Doc. 17] be denied. If the district judge or the parties have any concerns about duplicity, the Court can address those concerns before the case is submitted to the jury at which time the Court can consider whether to use a special verdict form, whether to give a unanimity charge, or other possible solution.

### III.   CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendant's Motion to Compel Selective Prosecution Discovery [30] be **DENIED**. Because Defendant cannot meet the legal standard for his discovery motion, he necessarily cannot meet the higher standard for his motion to dismiss. Accordingly, I **RECOMMEND** that Defendant's Motion to Dismiss the Indictment with Prejudice for Selective Prosecution [22] be **DENIED** as well. Finally, I **RECOMMEND** that Defendant's Motion to Quash Count One as Fatally Duplicitous or to Require Forced Election [Doc. 17] be **DENIED**.

**IT IS SO ORDERED**, this 5th day of September, 2017.

_____
Catherine M. Salinas
United States Magistrate Judge