**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL CASE NO.** |
| | : | **1:17-CR-0040-SCJ** |
| **ALI-HAIDER KHAN,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

This matter appears before the Court for consideration of the magistrate judge's December 11, 2017, Final Report and Recommendation ("R&R") (Doc. No. [60]), in which the Honorable Catherine M. Salinas, United States Magistrate Judge, recommended that Defendant's Motion to Suppress the November 9, 2015 traffic stop and warrantless search of the 2011 Nissan Altima, Tag Number QAC7013 (Doc. Nos. [20, 21]) be granted.

As stated in the R&R, Defendant's motions focus on the November 9, 2015 traffic stop and subsequent search of Defendant's car that led to the discovery of three boxes of synthetic marijuana.  Doc. No. [60], p. 1.  Defendant challenges the admission of all evidence arising from the stop and search of Defendant's car, arguing that the stop and search violate the United States Constitution's Fourth Amendment prohibition on unreasonable searches and seizures.  Id.

The Magistrate held an evidentiary hearing on June 8, 2017 and oral argument on September 19, 2017. Doc. No. [60], pp. 1–2.[1]

In the R&R, the Magistrate set forth facts presented at the evidentiary hearing and the proceedings of the case. Doc. No. [60], pp. 2–7. The Magistrate concluded that the Government failed to carry its burden of showing that the automobile exception to the warrant requirement applies in this case, essentially because of a failure to present evidence as to the knowledge of the Georgia State Patrol trooper (M.S. Allen) who conducted the traffic stop and search of the Defendant's car. Doc. No. [60], p. 11.

The Government has filed an objection to the R&R (Doc. No. [71]) and Defendant filed a response. Doc. No. [72].

"The district judge must consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59; see also 28 U.S.C. § 636

---

[1] The Court has read the transcripts of the magistrate's June 8, 2017 evidentiary hearing and the September 19, 2017 oral argument. Doc. Nos. [35], [67]. Cf. United States v. Elsoffer, 644 F.2d 357, 358 (5th Cir. 1981) (per curiam) (holding that the district judge must also "read the transcript of the hearing before a magistrate on a motion to suppress, before adopting the magistrate's recommendation."). The Court has also reviewed the evidence presented at the June 8, 2017 evidentiary hearing, inclusive of the dash cam video footage.

and <u>Stephens v. Tolbert</u>, 471 F.3d 1173, 1177 (11th Cir. 2006) ("a district court 'may . . . receive further evidence' when it reviews the report and recommendation of a magistrate judge.") (citations omitted).

In its objections, the Government argued, *inter alia*, that if the Court remains unsatisfied with the scope of evidence presented, the Government requested that the Court re-open the evidentiary hearing before suppressing the Government's evidence on the issue. Doc. No. [71].

After reviewing the record for this case, the Court, in the exercise of its discretion determined that receiving additional evidence (on the issue of why the car the Defendant was driving was stopped) was proper and scheduled a hearing for April 25, 2018. At the beginning of said hearing, Defense Counsel objected to the hearing on the grounds of fundamental fairness and best evidence, citing to the magistrate's R&R in which the magistrate wrote that "[t]he Government had not fewer than three opportunities to either present such testimony or move to reopen the evidence, and it has not done so . . . . [T]he Government should be made to stand by its decisions." Doc. No. [60], p. 12 n.4. Defendant also objected on the ground that the best evidence is the video of the traffic stop, not the testimony of the trooper who conducted the traffic stop.

AO 72A
(Rev.8/82)

The Court has not disregarded Defendant's objections and arguments on fundamental fairness and best evidence. After giving consideration to the objections, the Court cannot agree with the arguments because they are contrary to the law. The Court also finds that it would be an abdication of its responsibility to make an informed decision.

It has been held that "the district court has discretion to receive new evidence **without any special justification** while conducting *de novo* review of a magistrate judge's report and recommendation . . . ." United States v. Hayden, 759 F.3d 842, 846 (8th Cir. 2014) (emphasis added). The Supreme Court has also emphasized that "[t]he authority and the responsibility to make an **informed**, final determination . . . remains with the judge," even after the magistrate has issued an R&R. Mathews v. Weber, 423 U.S. 261, 271(1976) (emphasis added).

In the context of a motion to reopen a suppression hearing,[2] the Second Circuit has held that "on a motion to reopen a suppression hearing:

> we now hold that, on a motion to reopen a suppression hearing, there is **no bright-line rule that necessarily and invariably requires the government to provide a reasonable justification**

---

[2] The Court recognizes, as indicated by the Government at the April 25, 2018 hearing, that the current procedural posture of this case is not actually a reopening of the suppression hearing, but a receiving of additional evidence in accordance with 28 U.S.C. § 636 and Federal Rule of Criminal Procedure 59.

4

**for its failure to offer relevant evidence at an earlier suppression proceeding.** Whether or not the government can justify its delay is simply one factor, among others, that a district court may consider when deciding whether to reopen a suppression hearing. We agree with the other circuits that have reached this conclusion. **A "defendant is entitled to have evidence suppressed only if it was obtained unconstitutionally.** If matters appearing later indicate that no constitutional violation occurred, **society's interest in admitting all relevant evidence militates strongly in favor of permitting reconsideration."** United States v. Regilio, 669 F.2d 1169, 1177 (7th Cir. 1981). As the Ninth Circuit has recognized, "**[a] criminal defendant acquires no personal right of redress in suppressed evidence" because the rationale for suppressing unlawfully obtained evidence is to deter official misconduct, not to compensate criminal defendants for the violation**. United States v. Rabb, 752 F.2d 1320, 1323 (9th Cir.1984).[3] **If the government possesses evidence showing that, in fact**, **no official misconduct occurred, the interests of justice militate strongly in favor of considering this evidence even if it is belatedly brought to the district court's attention.** In the last analysis, a district court should be permitted, in the exercise of its discretion and in light of the totality of the circumstances, to determine whether its suppression ruling should stand. **While it may often be useful for the government to explain its reasons for not introducing evidence earlier, a district court may consider the evidence without first finding good cause for the government's omission or delay.**

---

[3] The Supreme Court has also stated that "[t]he [exclusionary] rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" United States v. Leon, 468 U.S. 897, 906 (1984).

AO 72A
(Rev.8/82)

United States v. Odeh, 552 F.3d 177, 196–97 (2d Cir. 2008) (emphasis added); see also United States v. Craft, 30 F.3d 1044, 1045 (8th Cir. 1994) (citing 28 U.S.C. § 636(b)(1) and concluding that the district court did not abuse its discretion in receiving further evidence that was relevant to the suppression motion) and United States v. Jenkins, 728 F.2d 396, 398 (6th Cir. 1984) (reversing a denial of the government's motion to reopen the suppression hearing, stating that "[i]t will be time to consider an ultimate decision on the suppression motion when all the facts are on the record.").

In light of the above-stated authority, the Court is unable to uphold Defendant's "fundamental fairness" arguments, as a defendant acquires no personal right of redress in suppressed evidence and the rationale for suppressing the evidence (i.e., to deter official misconduct) is not present, if in fact, the Government has evidence that no official misconduct occurred. Odeh, 552 F.3d at 197.[4] Here, the only way for the Court to make an informed, final

---

[4] The Simms and McWhorter cases cited by Defendant in the briefing (at Doc. No. [59], p. 14; Doc. No. [72], p. 21) were decided, post-denial of a motion to suppress/dismiss and on a motion to reopen the suppression hearing. United States v. Simms, 385 F.3d 1347, 1351 (11th Cir. 2004) and United States v. McWhorter, 380 F. App'x 965, 969 (11th Cir. 2010). Neither case provides a legal standard for assessing fundamental fairness and a district court's decision to receive further evidence in accordance with 28 U.S.C. § 636 and Fed. R. Crim. P. 59.

decision on the suppression issue is to have all the facts on the record, as to the stop of the Defendant's vehicle.

Defendant's "best evidence" argument also fails, as "[t]he fact that a video recording may at times be in fact the 'best' evidence of what occurred does not render first-hand testimony of the event incompetent." Jackim v. Sam's E., Inc., 378 F. App'x 556, 565–66 (6th Cir. 2010).

Next, the Court considers the merits of the Defendant's pending motions. The Court will set forth the evidentiary facts, applicable law, and its analysis.

## I. FACTS PRESENTED AT THE EVIDENTIARY HEARINGS[5]

At the evidentiary hearing, Drug Enforcement Administration ("DEA") Special Agent Sherezad Dunn testified that in 2015, when she was working undercover for the City of East Point Police Department and posing undercover as a drug purchaser named "Jasmine," she had arranged to purchase 3,000 packets of synthetic marijuana from Defendant. [Tr. 4, 7–10].[6] Special Agent Dunn set up a meeting for November 9, 2015 between Defendant and a

---

[5] In this section of the Order, the Court adopts portions of the facts section of the Magistrate's R&R (for which there is no clear error). Doc. No. [60], pp. 2–7.

[6] The bracketed transcript references herein are to Doc. No. [35] (the June 8, 2017, evidentiary hearing before the magistrate). The transcript of the April 25, 2018 hearing before this Court has not yet been prepared.

AO 72A
(Rev.8/82)

confidential source ("the CS") at the Sam's Club parking lot on Clairmont Road, in Atlanta, Georgia.[7] [Tr. 11-12]. The CS was instructed to meet Defendant in the parking lot, determine if Defendant had brought with him the packets of synthetic marijuana, and if so, tell Defendant to drive north on Interstate 85 to another location where Jasmine would be waiting with the money. [Tr. 12].

Special Agent Dunn testified that before the meeting took place, she had informed the Georgia State Patrol ("GSP") about the investigation. [Tr. 13-14]. She also had requested that the GSP conduct a traffic stop of Defendant's car after he left the meeting, if Defendant showed up as planned with the drugs. [Tr. 14, 22–23]. She explained that the DEA routinely asked for this type of assistance from the GSP in order to protect its investigations and confidential sources. [Tr. 14–15, 22–24]. With respect to the drug deal at issue in this case, she testified that someone from the DEA (she could not remember who) asked GSP "to conduct a traffic stop of Mr. Khan's vehicle, to find their own probable cause to stop the car and carry on with their investigation." [Tr. 14, 22]. When asked what the GSP would do if it were unable to find its own independent basis for a traffic stop, Special Agent Dunn testified, "then DEA would just say well, we know there's

---

[7] Defendant first came to law enforcement's attention when the CS informed them that Defendant had offered to provide the CS with some synthetic marijuana samples.

8

suspected synthetic marijuana in the vehicle, you can stop the vehicle, and if that means compromising the investigation at that point, then that's just what happens." [Tr. 15].

On the date of the meeting, November 9, 2015, the DEA and other law enforcement officers set up surveillance in the Sam's Club parking lot. Special Agent Dunn was not present in the parking lot, but other law enforcement officers were there and able to observe the meeting, including Georgia Bureau of Investigation Special Agent Marvin Reid Montgomery, who testified at the evidentiary hearing. [Tr. 13, 21, 28-40]. Special Agent Montgomery testified that he was conducting surveillance at the Sam's Club meeting and taking surveillance photographs from an undercover vehicle. [Tr. 28-29]. The GSP was on the scene as well, although the Government presented no evidence as to which particular troopers or officers were there. [Tr. 24].

Special Agent Montgomery observed Defendant and the CS arrive at the Sam's Club parking lot, and he photographed them talking. [Tr. 29-31]. He watched as the CS appeared to confirm that Defendant had the drug packets in his car. [Tr. 33]. Meanwhile, Special Agent Dunn was listening to a "DEA radio,"

and through the radio communications, she was aware that Defendant had arrived in the parking lot, that the CS had checked the vehicle, and that the CS had confirmed that Defendant had the drugs. [Tr. 13, 21]. After confirming that Defendant had brought the drugs with him, the CS told Defendant to drive north on Interstate 85 to another location, and then both the CS and Defendant got back into their respective vehicles and drove away. [Tr. 13, 34-35]. When Defendant pulled out of the Sam's Club parking lot, Special Agent Dunn was notified on the radio that Defendant's car was moving. [Tr. 21-22]. She testified that at that point, "we let GSP know that [Defendant's car] is leaving, we give GSP the go-ahead to do what they need to do." [Id.].

Shortly after Defendant pulled onto Interstate 85, GSP Trooper M.S. Allen began following Defendant, and approximately a minute and a half later, Trooper Allen pulled over Defendant's car. [Def. Ex. 1 (Doc. No. [65])]. Special Agent Dunn was driving behind the GSP cruiser, and when Trooper Allen pulled Defendant over, Special Agent Dunn kept on driving. [Tr. 16]. She did not observe any traffic infraction. [Tr. 16, 19].

Trooper Allen testified that prior to the traffic stop of Defendant's car, he had been contacted by the DEA and was told that someone would be bringing

Spice (synthetic marijuana), that would be relocated, and he was to make a traffic stop.[8]  He stated that the DEA did not request probable cause, but generally a trooper finds his own probable cause to initiate the stop.  Trooper Allen testified that he has a DEA radio mounted in his car and that the DEA was communicating with him by radio on the day of the Defendant's traffic stop. Trooper Allen stated that he knew what was happening via the updates over the DEA radio.  Trooper Allen also testified that he would not have known which car to pull over if it had not been for the DEA radio.  Trooper Allen testified that he had been on stand-by in the area of Clairmont Road and that he first spotted Defendant's car in the area of Jimmy Carter Road.  Trooper Allen stated that he was looking for traffic violations and that he noticed that Defendant was weaving (white line to white line) in his vehicle for about a half of a mile. Trooper Allen testified that he initiated the traffic stop on two bases: (1) the issue with the DEA and (2) to make sure that the driver was not impaired.

---

[8]  Trooper Allen also referred to this type of stop as a "whisper stop."  See United States v. Son, No. 1:12-CR-42-ODE-JFK, 2012 WL 4711978, at *1 n.4 (N.D. Ga. Oct. 2, 2012) ("A 'whisper stop' is used in investigations to avoid disclosure of the underlying drug investigation and, in this case, to protect the role of the confidential informant. Although the trooper is aware of facts related to the drug investigation, the traffic stop conducted is based on a violation of traffic laws.").  Trooper Allen further testified that his DUI investigation was not a ruse and that he has stopped other cars hundreds of times for weaving within a lane.

AO 72A
(Rev.8/82)

According to Trooper Allen's dash cam recording (both video and audio), Trooper Allen pulled Defendant over and told Defendant that he was "weaving a lot within the lane." [Def. Ex. 1 (Doc. No. [65])]. The recording reflects that a few minutes later, Trooper Allen reported (either by phone or by radio—it is not clear from the recording) that he wanted to "check [Defendant's] mannerisms just based on the way he was driving." [Id.]. Trooper Allen did not say anything at that time about a drug investigation or having instructions from the DEA to search Defendant's car. [Id.]. Trooper Allen testified that he did not mention anything about the DEA investigation at the time, to keep the Confidential Source (CS) safe and prolong the DEA's investigation as long as possible.

Trooper Allen also testified that he saw two large boxes in the backseat of Defendant's car, consistent with the DEA's information.

Trooper Allen testified that he asked Defendant to step out of the car to evaluate the Defendant for impairment. He testified that he observed no indication of impairment, but still wanted to conduct a horizontal gaze nystagmus (HGN) before releasing Defendant.

There was also another officer on the scene and together the two officers escorted Defendant (while in his vehicle) a short distance to an overpass to

conduct the HGN. [Def. Ex. 1 (Doc. No. [65])]. At Trooper Allen's instructions, the three cars drove in a line, with the other officer first, followed by Defendant, and Trooper Allen third in the line. [Id.]. While driving to the overpass, Trooper Allen stated to the other officer (either by phone or by radio—it is not clear from the recording) that he did not want to go too far and "risk the way he's driving." [Id.]. Trooper Allen then conducted an HGN, which Defendant passed. [Id.]. Nevertheless, the officers did not allow Defendant to leave, but detained him for several more minutes. [Id.].

While talking with Defendant, Trooper Allen noticed that Defendant changed his story about where he was going. Trooper Allen wrote in his report that "[d]ue to it being a high crime area, the nervousness of the occupants, and change of story, I asked the driver for consent to search his vehicle."[9]

Approximately twenty minutes after the initial stop, Trooper Allen requested and obtained consent from Defendant to search Defendant's car.[10]

---

[9] The report was introduced into evidence at the April 25, 2018 hearing as Defendant's Exhibit 1. Doc. No. [78].

[10] The consent to search form was introduced into evidence at the April 25, 2018 hearing as Government's Exhibit 1. Doc. No. [78].

13

Trooper Allen testified that he did not promise or threaten Defendant in obtaining consent.

During the search, the officers found three boxes of suspected synthetic marijuana, which were seized and given to the DEA. [Def. Ex. 1 (Doc. No. [65]); Tr. 17, 36]. Defendant was not arrested at that time, but rather was allowed to leave. Trooper Allen testified that Defendant was not arrested per the DEA's request.

When asked why the DEA information was not in his written report, Trooper Allen testified that the report was notated with three asterisks to indicate that it involved a DEA investigation and that this notation practice was consistent with his training. Trooper Allen also indicated that he expected the DEA to have the omitted information in the DEA report of the investigation.

## II. LEGAL STANDARD AND ANALYSIS

As stated in the R&R, under the Fourth Amendment to the United States Constitution, every search or seizure by a government agent must be reasonable. See U.S. Const. amend. IV. Accordingly, a search or seizure must normally be conducted under the authority of a court-issued warrant, supported by a finding of probable cause to believe that evidence of a crime will be found in the targeted

14

location. See Mincey v. Arizona, 437 U.S. 385, 390 (1978). Warrantless searches are "per se unreasonable" under the Fourth Amendment, unless they fall into one of a few well-delineated exceptions. Arizona v. Gant, 556 U.S. 332, 338 (2009); United States v. Campbell, 920 F.2d 793, 795 (11th Cir. 1991) ("A search without a warrant based on probable cause is illegal, unless the government can show that it falls into one of those limited exceptions recognized by law.").

In this case, the Government has elected not to argue that the stop was based on any traffic infraction.[11] Rather, the Government argues that the stop and search of Defendant's car were authorized by the automobile exception to the

---

[11] Even so, the Court finds that to the extent it is proper to look to Georgia law, there is authority to support a ruling for a valid traffic stop based on reasonable and articulable suspicion. See Veal v. State, 273 Ga. App. 47, 50, 614 S.E.2d 143, 145 (2005) ("[t]he police can stop drivers who engage in erratic driving behavior, even if it is simply weaving within a lane," as the conduct forming the basis of the reasonable suspicion on the part of a trained law enforcement officer need not be an actual violation of the law); cf. United States v. $175,722.77, in U.S. Currency, more or less, 307 F. App'x 257, 259 (11th Cir. 2007) (looking to Georgia statute to determine if defendant had committed a traffic violation); but see Elkins v. United States, 364 U.S. 206, 224 (1960) ("whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."). The Court also recognizes that Defendant cites the case of United States v. Smith, 799 F.2d 704, 709 (11th Cir. 1986) in which the Court found that the Florida statutes relied on by the Government did not apply to "one six-inch deviation from the road and slight 'weaving' within a single lane of an interstate highway" and rejected the traffic stop rationale as pretextual. Doc. No. [20], p. 4. The Smith case cited by Defendant is distinguishable on the ground of absence of pretext in the case *sub judice*.

warrant requirement. Under the automobile exception, a vehicle may be stopped and searched without a warrant if there is probable cause to believe the vehicle contains contraband or evidence of a crime: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940 (1996); <u>see also</u> <u>United States v. Virden</u>, 488 F.3d 1317, 1321–22 (11th Cir. 2007) ("[T]he search and seizure of vehicles without a warrant is permissible when the police have probable cause to believe a vehicle contains contraband.") (citations omitted). When a search is conducted pursuant to the automobile exception, law enforcement is permitted to "search all parts of the vehicle, and any containers therein, where the object of the search might be found." <u>United States v. Baldwin</u>, 774 F.3d 711, 720 (11th Cir. 2014).

Probable cause for a search exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); <u>United States v. Goddard</u>, 312 F.3d 1360, 1363 (11th Cir. 2002).

In this case, the Government contends that Trooper Allen had probable cause to stop and search Defendant's car because the collective knowledge of all

16

the officers working on the undercover drug investigation can be imputed to him. The Eleventh Circuit has held that "[p]robable cause exists where the facts and circumstances within the collective knowledge of law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985) (internal quotation marks omitted). However, the knowledge of the group may be imputed to the officer who conducts the stop and search only if it is shown that the officer "maintained at least a minimal level of communication during [the] investigation." Id. Thus, where, like here, the Government proceeds on a "collective knowledge" theory, the validity of the stop and subsequent search rises and falls on the level of communication between the officer who conducted the stop and the other law enforcement officers who were aware of the facts establishing probable cause. It is the Government's burden to establish the application of the automobile exception by a preponderance of the evidence. See United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983); United States v. Matlock, 415 U.S. 164, 177 n.14 (1974).

AO 72A
(Rev.8/82)

After review, the Court finds that the Government has carried its burden of showing a valid stop, because the officers who were working on the case, collectively, had knowledge of the facts that rose to the level of probable cause. The Court specifically finds that there is sufficient evidence of minimal communication to apply the collective knowledge principle, through the evidence showing that prior to the traffic stop of Defendant's car, Trooper Allen had been contacted by the DEA and was told that someone would be bringing Spice (synthetic marijuana); that on the date in question, Trooper Allen was on stand-by at the DEA's request; that Trooper Allen had a DEA radio mounted in his car; that the DEA was communicating with Trooper Allen by radio on the day of the Defendant's traffic stop; and that Trooper Allen knew what was happening via the updates over the DEA radio. <u>Cf.</u> <u>United States v. Williams</u>, 876 F.2d 1521, 1523, 1523–24 (11th Cir. 1989) (finding that the district court correctly denied a motion to suppress and found that the initial stop of defendants' automobile was valid, where a detective told officer to stop car and identify driver and said that the stop "was a part of a drug investigation, but did not give the officer any more information").

AO 72A
(Rev.8/82)

The Court recognizes that Defendant challenges Trooper Allen's testimony, based on the omissions in his report and actions on the scene; however, after observing Trooper Allen testify on the stand, the Court finds him credible. Although there may be a better practice for indicating participation in a DEA investigation on a police report (other than the asterisk method utilized here), the failure to include details of the DEA investigation in the report does not render Trooper Allen, not credible. Cf. United States v. Smith, 688 F.3d 730, 734 n.10 (11th Cir. 2012) ("The mere fact an incident report omits certain details is not sufficient to render the officer's testimony concerning the underlying action facially implausible.") (quoting United States v. Mendoza, 677 F.3d 822, 828 (8th Cir.2012)) and United States v. Arthur, No. 1:06CR140-MHT, 2006 WL 2971619, at *3 (M.D. Ala. Oct. 17, 2006) ("Although the failure to record the advisement of rights in a police report may not be good practice, such an omission is not uncommon, and nothing on the record suggests that [officer] was required to note specifically that he had Mirandized the defendant in the police report.").

Defendant further argues that even if the Court believes that Trooper Allen received some kind of general instruction from the DEA, the Court should not

19

believe that Trooper Allen was privy to the DEA investigation or that there was communication that contained enough material facts to impute probable cause. In his briefing, Defendant states that the Eleventh Circuit has not addressed the quantum of evidence required, but other Circuits have rejected the "single team" theory proposed here. Doc. No. [72], p. 9. Defendant argues that the rationale of United States v. Shareef, 100 F.3d 1491, 1504 (III)(B)(2) (10th Cir. 1996) (holding that "[w]e can see the value in imputing knowledge among officers working closely together" but where only one officer knew of the defendant's height and weight and the other officer did not know the "significance of the information," the height/weight information could not be attributed to other officer's knowledge and contribute to other officer's reasonable suspicion that defendant was wanted in another state) and United States v. Massenburg, 654 F.3d 480, 492–96 (IV) (4th Cir. 2011) (finding "no convincing defense" for courts adopting an aggregation rule (i.e., looking to the aggregated knowledge of all officers involved to determine if reasonable suspicion or probable cause existed and used when the information at issue has not been communicated to the other officers) to apply here and declining to impute knowledge of an officer's observation of a bulge in defendant's jacket pocket to another officer).

20

In the absence of Eleventh Circuit authority applying such rationale/standards, the Court declines to apply the rationale/standards set forth in the <u>Shareef</u> and <u>Massenburg</u> cases.

Next, the Court considers the length of Defendant's detention.

As stated in the R&R, approximately twenty minutes after the initial stop, Trooper Allen requested and obtained consent from Defendant to search Defendant's car. Doc. No. [60], pp. 6–7.

The Eleventh Circuit has held that "[f]ourteen minutes is not an unreasonable amount of time for a traffic stop [and] that [it has] approved traffic stops of much longer duration. <u>United States v. Purcell</u>, 236 F.3d 1274, 1279 (11th Cir. 2001) (citing <u>United States v. Hardy</u>, 855 F.2d at 761 (11th Cir. 1988)(approving traffic stop of fifty minutes duration); <u>see also</u> <u>United States v. Place</u>, 462 U.S. 696, 709–10 (1983)("we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case."). The twenty minutes at issue here, falls within times that the Eleventh Circuit has found reasonable. Defendant's argument that the HGN had been completed "eleven minutes" before the request for consent to search (Doc. No. [21], p. 7) is not determinative, as Trooper Allen testified that

AO 72A
(Rev.8/82)

he stopped the car on two bases: (1) the issue with the DEA and (2) to make sure that the driver was not impaired.  To this regard, even if the impairment investigation had concluded, the drug investigation was still ongoing. Cf. United States v. Childs, 277 F.3d 947, 953–54 (7th Cir. 2002) ("the [F]ourth [A]mendment does not require the release of a person arrested on probable cause at the earliest moment that step can be accomplished. What the Constitution requires is that the entire process remain reasonable.").

Lastly, after a review of the totality of the circumstances (including the absence of evidence of threat or intimidation and the signed/written consent form (Doc. No. [78])), as well as applicable factors/law, the Court finds that the Government has met its burden of showing that Defendant's consent to a search of his car was freely and voluntarily given.  See United States v. Yeary, 740 F.3d 569, 581 (11th Cir. 2014) ("The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.") (citations omitted) and United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) ("An officer conducting a routine traffic stop may request consent to search the vehicle. A consensual search is constitutional if it is voluntary; if it is the

product of an 'essentially free and unconstrained choice.' In assessing voluntariness, the inquiry is factual and depends on the totality of the circumstances. A district court's determination that consent was voluntary is a finding of fact, that will not be disturbed on appeal absent clear error. In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found.") (citations omitted).

"[O]nce [the defendant] consented to the search, the interaction became consensual for Fourth Amendment purposes." United States v. Peguero, 518 F. App'x 792, 795 (11th Cir. 2013).

## III.  CONCLUSION

After *de novo* review, the Magistrate's Report and Recommendation (Doc. No. [60]) is **ADOPTED in part** and **REJECTED in part**.  More specifically, portions of the magistrate's statement of facts and law were adopted herein.  The magistrate's recommendation for grant of the pending motions was rejected.

AO 72A
(Rev.8/82)

The Government's objections to the R&R (Doc. No. [71]) are **SUSTAINED**.

The Defendant's verbal objection to the district court receiving further evidence is **OVERRULED**.

Defendant's Motion to Suppress the November 9, 2015 Traffic Stop of the 2011 Nissan Altima, Tag Number QAC7013 (Doc. No. [20]) is **DENIED**.

Defendant's Motion to Suppress the Warrantless Search of the 2011 Nissan Altima, Tag Number QAC7013 (Doc. No. [21]) is **DENIED**.

A notice of trial setting will issue at a later date.

      **IT IS SO ORDERED,** this <u>15th</u> day of May, 2018.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)